# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

CASE NO.:

**KATARZYNA JARRETT,**

   *Plaintiff,*

v.

**LEXISNEXIS RISK SOLUTIONS INC.,**

   *Defendant,*

_____/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1. Plaintiff, Katarzyna Jarrett (hereinafter "Plaintiff" or "Ms. Jarrett") brings this action against Defendant LexisNexis Risk Solutions Inc. ("LexisNexis") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Defendant's voluntary contact with Plaintiff in Florida made it foreseeable that it would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

4. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Brevard County, Florida.

## PARTIES

5. Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Brevard County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. Defendant LexisNexis is and was a "consumer reporting agency" as provided for under the FCRA. 15 U.S.C. §1681a(f).

7. Defendant LexisNexis is a corporation incorporated under the laws of the State of Delaware and authorized to do business in the State of Florida.

8. LexisNexis maintains its principal place of business located at 1000 Alderman Drive, Alpharetta, GA 30005 with a registered agent for service of process listed as CT Corporation System 1200 South Pine Island Road, Plantation, FL 33324.

9. LexisNexis engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT

10. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

11. Congress found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

12. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

13. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

14. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the

consumer that the information is not information relating to any transaction by the consumer.

15. A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B).  See 15 U.S.C. §§ 1681c-2(c)(2).

16. In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

17. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.,* No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

18. The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

19. The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

20. In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

21. The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

22. The FCRA provides that if the disputed information is inaccurate or incomplete or cannot be verified, the credit reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item

5

of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

23. The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

24. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1681n.

25. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

26. If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

27. A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

## FACTUAL ALLEGATIONS

28. Ms. Jarrett is a victim of identity theft.

29. In or around 2022 and 2023, an unknown individual obtained access to Ms. Jarrett's personal identify information, obtained fraudulent government

identification cards using her information and began submitting apartment rental applications in her name.

30. Ms. Jarrett has been a homeowner since January 2021 and did not have a need to rent apartments in 2022 or 2023.

31. In or around July 2023, Ms. Jarrett discovered that she was a victim of identity theft and that the identity thief had successfully rented a number of apartments in her name, had been evicted from those apartments for non-payments resulting in Ms. Jarrett being contacted by debt collectors.

32. In an attempt to remedy and prevent further instances of identity theft against her, Ms. Jarrett immediately contacted the West Melbourne Police Department to report the identity theft and completed the Federal Trade Commission ("FTC") Identity Theft Report.

33. Ms. Jarrett also began requesting her consumer files from various consumer reporting agencies including LexisNexis.

34. Ms. Jarrett obtained her LexisNexis consumer report dated August 21, 2024 which included civil court records for three eviction proceedings against the identity thief and inaccurate and/or fraudulent personal identifying information.

35. Specifically, the August 21, 2024 LexisNexis consumer report included information related to the following civil proceedings:

    a. *72 Properties LLC v. Katarzyna Jarrett,* Case No. 2023-cc-100082, Hillsborough Circuit Court.

    b. *Howardgo LLC v. Katarzyna Jarrett*, Case No. 2023-cc-003527, Polk Circuit Court-Civil Division.

    c. *Spartan Property Management LLC v. Katarzyna Jarrett*, Case No. 2023-cc-027161, Hillsborough Circuit Court.

36. As the identity theft against Ms. Jarrett is extensive and ongoing, Ms. Jarrett was not aware of all of the eviction proceedings against the identity theft because Ms. Jarrett was never personally served in any of these matters.

37. Ms. Jarrett did become aware of the eviction proceedings in Polk County by Howardgo, LLC, and with the assistance of counsel, she was able to have herself removed as a named defendant in that case.

38. Ms. Jarrett, however, has already invested significant resources and time into remedying the effects of identity theft being committed against her and is not in a position to continue doing so, especially with the eviction proceedings.

39. On or about September 17, 2024, Ms. Jarrett mailed a dispute letter to LexisNexis disputing the fraudulent information in her August 21, 2024 LexisNexis consumer report.

40. In her dispute letter Ms. Jarrett explained that she was a victim of identity theft, detailed the identity theft being committed against her, requested that LexisNexis place a fraud alert and a security freeze on her file, and listed each item of information she was disputing including inaccurate name variations, date of birth, misspelled addresses and fraudulent addresses, email address and the eviction proceedings.

41. With her dispute letter, Ms. Jarrett provided LexisNexis with her driver's license, passport card, West Melbourne Police Department police report, two FTC identity theft report and the fraudulent copy of the driver's license being used by the identity thief that Ms. Jarrett was able to obtain through her research.

42. On or about October 23, 2024, LexisNexis provided Ms. Jarrett with investigation results into her dispute along with a copy of her consumer disclosure.

43. In its investigation results to Ms. Jarrett, LexisNexis stated 159 times that "we have reviewed the information from our Identification Records and determined the data being reported as unverifiable. The data in question has been removed and our files have been updated after research conducted with the following source: LexisNexis Consumer Center P.O. Box 105108 Atlanta GA 30348-5108" without identifying what information it was removing from her file.

44. Similarly, LexisNexis stated 24 times that "we have reviewed the information for our Address Characteristics Record and determined the data being reported is accurate. …" without identifying what information it was verifying as accurate.

45. Finally, LexisNexis stated 7 times that "we have reviewed the information from our Lien, Judgment and Civil Filing Records and determined the data being reported is accurate. Research was conducted with the following source: Hillsborough Circuit Court – Tampa County – Hillsborough, FL" without providing any information about its investigation into the Polk Court civil actions, if any.

46. The accompanying consumer report provided to Ms. Jarrett on October 23, 2024 with the investigation results shows that LexisNexis only removed two items that Ms. Jarrett was disputing: a misspelled physical address and an email address.

47. As a result of LexisNexis' conduct, Ms. Jarrett has suffered actual damages including emotional distress, damages to reputation, lost time and labor, and invasion of privacy.

## COUNT I - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST LEXISNEXIS

48. Plaintiff incorporates by reference paragraphs 1-47 as if fully stated herein.

49. At all times relevant hereto, LexisNexis is and was a "consumer reporting agency" as provided for under the FCRA.

50. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

51. During the relevant time frame, LexisNexis received Plaintiff's September 2024 dispute letter which requested that the fraudulent information be removed from her credit file.

52. LexisNexis violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate and/or fraudulent information in Plaintiff's consumer file after receiving actual notice of inaccuracies contained therein.

53. LexisNexis' acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

54. Alternatively, LexisNexis negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against LexisNexis in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST LEXISNEXIS

55. Plaintiff incorporates by reference paragraphs 1-47 as if fully stated herein.

56. At all times relevant hereto, LexisNexis is and was a "consumer reporting agency" as provided for under the FCRA.

57. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

58. LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it publishes concerning the Plaintiff.

11

59. After Plaintiff's September 2024 dispute letter, LexisNexis was placed on notice that it was reporting fraudulent information about Plaintiff, yet LexisNexis continues to include the fraudulent information in Plaintiff's consumer file.

60. LexisNexis' acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

61. In the alternative, LexisNexis negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against LexisNexis in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT III - VIOLATIONS OF 15 U.S.C. §1681c-2 AGAINST LEXISNEXIS

62. Plaintiff incorporates by reference paragraphs 1-47 as if fully stated herein.

63. At all times relevant hereto, LexisNexis is and was a "consumer reporting agency" as provided for under the FCRA.

64. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

65. LexisNexis violated 15 U.S.C. § 1681c-2 by failing to block the information that Plaintiff specifically identified was the result of identity theft.

66. LexisNexis' acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

67. In the alternative, LexisNexis negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against LexisNexis in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

68. Plaintiff demands a trial by jury on all issues so triable.

Dated: December 5, 2024

*Respectfully submitted*,

**SHARMIN & SHARMIN, P.A.**

*/s/ Eiman Sharmin*
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022
*Attorneys for Plaintiff*

13